In re THREET, Ermon D., Jr. a/k/a Threet, J.R. and Threet, Nancy J. d/b/a Red 11 Port, Debtors.

P. Ray WILLIAMS, Trustee, Plaintiff,

v.

THREET, Ermon D., Jr. a/k/a Threet, J.R. and Threet, Nancy J. d/b/a Red 11 Port, Defendants,

and

Plan Administrator, Atlantic Richfield Company Retirement Plan, Defendant.

Bankruptcy No. 89–01684–C.
Adv. No. 90–0079–C.

United States Bankruptcy Court, N.D. Oklahoma.

Aug. 28, 1990.

P. Ray Williams, Afton, Okl., for plaintiff.

Mark Craige, Tulsa, Okl., for defendants Ermon and Nancy Threet.

Gary S. Hess, Tulsa, Okl., for defendant plan administrator.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

Ermon D. Threet, Jr. ("Debtor") and Nancy J. Threet d/b/a Red 11 Port filed their petition for relief under Chapter 11 of the Bankruptcy Code on January 12, 1989. In their Schedule B-4 he claimed his interest in the Atlantic Richfield Company Retirement Plan as exempt.[1] On November 27, 1989, the case was converted to a case under Chapter 7 and P. Ray Williams ("Williams") was appointed Trustee. On March 19, 1990, Williams filed a complaint against both the Debtors and the Plan Administrator for Atlantic Richfield Company Retirement Plan asking that they be ordered to turn over to him the Debtor's interest in his retirement plan. The Threets filed an answer on April 26, 1990, denying that they were in possession of the funds in the plan and that they could not comply with a turn over order. They alleged that said property was in the possession of the Plan Administrator and requested that the complaint for turn over order against them be dismissed. Also, the Debtor admitted that if the funds in the retirement plan were property of the estate, then said funds should be turned over to the Trustee.

On June 21, 1990, the Plan Administrator for the Atlantic Richfield Company Retirement Plan filed an answer stating that the Debtor's interest in the retirement funds was not property of the estate and, further, that if the Court ordered a distribution of the funds, this would threaten the tax exempt status of the retirement plan.

On July 16, 1990, the Defendant filed a brief in support of his motion for summary judgment. No separate motion for summary judgment was filed but the Court will treat the Trustee's brief as an appropriate motion.

The uncontested facts are as follows:

1. Debtor was born August 15, 1939. He was 49 years of age at the time he filed for relief under Chapter 11.

2. Debtor was employed by the Atlantic Richfield Company from January 13, 1964 until November 15, 1983. On the date of bankruptcy, Debtor was fully vested in the Atlantic Richfield Company Retirement Plan and had made voluntary contributions which have a present value of $7,576.63. It is this fund which the Trustee demands the Plan Administrator turnover for the benefit of the Debtor's creditors.

3. The Atlantic Richfield Company Retirement Plan is a qualified pension benefit plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

4. That article 18.1 of the plan contains clauses which prevent creditors from garnishing or attaching said funds and the Debtor from voluntarily withdrawing said funds. (Anti-alienation clauses).

5. The Plan, however, provided in § 14.3 that if an employee terminated his employment after June 30, 1976, but before attaining the age of 65, the employee was on demand entitled to payment of the monies in his retirement fund.

6. The Debtor never demanded payment of the funds prior to bankruptcy.

The issue before the Court is whether the Debtor's interest in the retirement plan is part of his estate and can be claimed by the Trustee. A secondary issue is whether, if the Trustee does this, it would destroy the tax exempt status of the entire pension plan for all employees of the Atlantic Richfield Company.

This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. § 1334. This section states in part as follows:

Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all

---

1. This claim of exemption was disallowed by the Court on March 1, 1990, and the exempt status of the property is not at issue in the present proceeding.

civil proceedings arising under title 11, or arising in or related to cases under title 11....

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

This Court finds that this is a core proceeding pursuant to 28 U.S.C. § 157. Said section provides in part as follows:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

Core proceedings include, but are not limited to— ...

(e) orders to turn over property of the estate; ...

Section 541(a)(1) creates an estate upon the commencement of a case which consists of all legal or equity interests of the debtor in property at the commencement of the case. Said provisions are as follows:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case....

The nature of the estate created and the property included therein is discussed in Volume 4 COLLIER on Bankruptcy pp. 541–5 et. seq. The author states in part as follows:

Most importantly, the estate is comprised of all legal or equitable interests of the debtor in property, wherever located, as of the date the case is commenced. This provision is very broad and includes all kinds of property, both tangible and intangible, causes of action, and all other forms of property formerly specified in section 70a of the Bankruptcy Act....

Although the broad provision of section 541(a)(1) includes choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case.... The trustee can take no greater rights than the debtor himself had on the date the case was commenced ...

Thereafter, although title does not vest in the trustee himself, the trustee has authority to dispose of the property comprising the estate pursuant to sections 323(a) and 363(b) ...

Section 363(b) gives the trustee authority, after notice and a hearing, to use, sell, or lease, other than in the primary course of business, the property of the estate. These Code provisions are based on the same reasoning as Section 70a of the Act with a view toward the effective liquidation of the debtor's property. Although title does not vest in the trustee under the Code, he is given full authority to represent the estate and to dispose of all property which comprises the estate under section 541.... (n. omitted)

See also *In re Graham*, 726 F.2d 1268 (8th Cir.1984) where the Court of Appeals of the Eighth Circuit stated:

The filing of a Chapter 7 bankruptcy petition creates an estate comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). The legislative history of this section clearly establishes Congressional intent that the bankruptcy estate be as all-encompassing as the language indicates.

The scope of the paragraph is broad. It includes all kinds of property, including tangible and intangible property, causes of action ... and all other

forms of property specified in Section 70(a) of the Bankruptcy Act.... [I]t includes as property of the estate all property of the debtor, even that needed for a fresh start....

See also *In re Weeks*, 106 B.R. 257 (Bkrtcy.E.D.Okl.1989); *In re Goff*, 706 F.2d 574 (5th Cir.1983); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985); *In re Silldorff*, 96 B.R. 859 (C.D.Ill.1989); *In re Burns*, 108 B.R. 308 (Bkrtcy.W.D.Okl. 1989); and, *In re McIntosh*, 116 B.R. 277 (Bankr.N.D.Okl.1990).

■ On the date of bankruptcy, the Debtor had an unconditional contractual right to obtain the funds in his retirement plan with Atlantic Richfield Company. This is a legal right which clearly becomes part of the Debtor's estate. It is also clear that the Trustee has the same right in the property as the Debtor had and since the Debtor could demand payment on the date of bankruptcy, the Trustee can now demand the same payment. In the Silldorff case the court held that since the debtor was still employed at the time of bankruptcy the trustee had no greater rights than the debtor and could not demand payment until the debtor ceased his employment. The court stated as follows:

> In a number of cases, courts have found that, where the debtor was not entitled to a present distribution at the time of the petition, the bankruptcy Trustee was not entitled to one either. *See, In re Huff*, 61 B.R. 678, 684–85 (N.D.Ill.1986); *In re Loe*, 83 B.R. 641 (Bankr.D.Minn.1988), and *In re DeWeese*, 47 B.R. 251 (Bankr.W.D.N.C.1985). If a debtor does not possess an asset or a present right to demand, merely filing a petition for bankruptcy cannot create it. The Court agrees that the Trustee is only entitled to the property or assets which the Debtors could demand.

■ The Plan Administrator argues that § 541(c)(2) is applicable in the present case and its provisions prevent the Debtor's interest in the plan from being part of the estate. Said provision is as follows:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

This Court holds that this section does not apply to the facts of the present case. At the time of bankruptcy, creditors could not levy upon the Debtor's interest in the retirement plan and to that extent there was a restriction on any involuntary transfer of the Debtor's beneficial interest in the plan. However, as indicated above, the Debtor had a complete right to obtain the funds and, therefore, there was no restriction on his ability to voluntarily transfer his interest in the fund.

Also the overwhelming majority of cases including all of those cited above hold that § 541(c)(2) only applies where the beneficial interest of the debtor in a retirement plan can be found to be an interest in a spendthrift trust. It is obvious that on the date of bankruptcy the Debtor's interest in the pension plan was not an interest in a spendthrift trust because he had the absolute right to obtain the fund. This right to obtain the funds is a complete antithesis to a spendthrift trust. Also the funds in the trust were contributed by the Debtor and, therefore, the trust was self-settled. Under the law of spendthrift trusts including the statutory law of Oklahoma a self-settled trust cannot be spendthrift. See 60 O.S. § 175.25. See also *In re Weeks*, 106 B.R. 257 (Bkrtcy.E.D.Okl.1989); *In re Witlin*, 640 F.2d 661 (5th Cir.1981) and *In re Goff* and *In re Graham* supra.

In conclusion the Debtor's interests in the retirement fund are property of the estate and are not the subject of a spendthrift trust and should be turned over to the Trustee.

■ The Plan Administrator raises a "red herring" in its second argument. The Plan Administrator contends that if this Court enforces the clear provisions of the Bankruptcy Code that this would be an improper distribution of the retirement fund and it would lose its tax exempt status. Apparently the Plan Administrator is arguing that if he has to turn over to the

Trustee the Debtor's interest in the fund, this would destroy the tax exempt status of the fund for all the other thousands of employees of Atlantic Richfield Company. The Plan Administrator cites no authority for this draconian result other than private letter rulings of the Internal Revenue Service issued some 10 years ago. These letters state that any unauthorized disbursement would disqualify an entire plan from tax exempt status.

This argument has been addressed by other courts and rejected. See *Regan v. Ross*, 691 F.2d 81 (2nd Cir.1982); *In re DiPiazza*, 29 B.R. 916 (Bankr.N.D.Ill.1983).

The rationale of these decisions is that 29 U.S.C. § 1144(d) 1979 provides in substance that nothing in the ERISA statute shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States. Since it is clear that pension funds are part of the Debtor's estate, unless they are part of spendthrift trust, any provision of ERISA that prevents a distribution to a trustee in bankruptcy would fail.

A separate order will be entered directing the Plan Administrator to turn the Debtor's interest in the pension over to the Trustee in bankruptcy. This order will also adopt the view of the Debtors and will not order them to turn over property that is not in their possession.