In the Matter of Deborah J. LEE, Stephanie Louise–Gamez Cummins, Robert S. Garcia and Mary Ann Garcia, Debtors.

Bankruptcy Nos. 89–8271–8B7, 90–2622–8B7 and 90–3135–8B7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 18, 1990.

Jay W. Fusco, St. Petersburg, Fla., for Deborah J. Lee.

William Knight Zewadski, Tampa, Fla., for Publix Super Markets, Inc. Profit Sharing Plan and John A. Turner, Plan Trustee.

Charles L. Weissing, Tampa, Fla., Trustee.

Lynne England, Tampa, Fla., U.S. Trustee.

Charles W. Matthews, Tampa, Fla., for Stephanie Louise–Gamez Cummins.

John V. Brook, Jr., St. Petersburg, Fla., Trustee.

Noel K. Evans, Millinocket, Me., and Norman Davidson, Tampa, Fla., for trustee.

Diane Barrs, Tampa, Fla., for Robert S. and Mary Ann Garcia.

## ORDER ON DEBTORS' CLAIM OF EXEMPTIONS

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THESE MATTERS came on for consideration in the above-captioned Chapter 7 cases by the Trustee filing an Objection to the Debtors' Claim of Exemptions. Each case is similar not only on the basis of the Trustee's objection, but also to the specific exemption which is an ERISA qualified pension plan.

On November 14, 1989, Debtor, Deborah J. Lee, filed for relief under Chapter 7 of the Bankruptcy Code. In her Schedule B–4, Debtor listed a Publix Super Markets, Inc. Profit Sharing Retirement Fund and

Stock Ownership Trust in the amount of $44,000.00 as exempt pursuant to Fla.Stat. § 222.21(a). Debtor also alleges the funds are exempt under the Florida common law theory of spendthrift trust. The Trustee has objected to the exemption.

Debtor, Stephanie Louise–Gamez Cummins is currently employed with the Eckerd Drug Company. On March 22, 1990, she filed for relief under Chapter 7 of the Bankruptcy Code. In her Schedule B–4, she claimed an interest in the Jack Eckerd Corporation Profit Sharing Plan in the amount of $3,448.83 as exempt. The Trustee has objected to the exemption.

On April 5, 1990, Debtors, Robert and Mary Ann Garcia, filed for relief under Chapter 7 of the Bankruptcy Code. In their Schedule B–4, Debtors claimed an interest in their retirement plan called the Deferred Compensation for Public Employees Hartford Variable Annuity and Life Insurance Company as exempt. The Debtors have placed no value on the plan. The Trustee has objected to the exemption.

The Trustee of Publix Super Markets, Inc. Profit Sharing Plan and Trust (Publix Trustee) filed a Motion to Intervene as to [Lee's] Claim of Exemption in Plan Assets. This Court denied the Motion but allowed the Publix Trustee to file a memorandum of law as *amicus curiae.*

The flurry of objections to pension plan exemptions by the Chapter 7 Trustees have been brought about by the United States Supreme Court decision in *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). That decision held a Georgia exemption statute was preempted by federal law, 29 U.S.C. § 1144(a) otherwise known as § 514(a) of ERISA. There is no doubt the Supreme Court decision has required bankruptcy courts to determine whether or not such exemption statutes in other states such as Florida are similarly preempted, thus unconstitutional. If such laws are unconstitutional, there are no exemptions for pension plans, and the pension plans are clearly property of the estate.[1] It is quite clear the Supreme Court decision in *Mackey* has affected the Florida exemption and has made these particular pension plans non-exempt.

This Court adopts Judge Alexander L. Paskay's decision in *In re Gardner,* 118 B.R. 860 (Bankr.M.D.Fla.1990). In that decision, Judge Paskay concluded, as this Court also does, (with one qualification) that ERISA plans are not exempt property under Florida law.

■ The analysis is quite straight forward. Florida has opted out of the federal exemptions in Title 11 U.S.C. § 522(b). Fla.Stat. § 222.20. Fla.Stat. § 222.21 provides an exemption for pension plans such as has been acquired by the Debtors in these cases. The broad language of *Mackey* engulfs the Florida Statute and thus, ERISA preempts it. Thus, Fla.Stat. § 222.21 exempting an ERISA pension plan must be considered unconstitutional as it relates to bankruptcy exemptions.[2] The ultimate inquiry is whether there is any other means by which the pension plan can be deemed exempt.

■ Section 522(b)(2)(A) of the Bankruptcy Code suggests a safe harbor. It provides an exemption for the pension plan if other federal law, state law, or local law created such exemption at the date of filing the petition. Thus, does ERISA itself as a federal law create an exemption? The answer is no. The Eleventh Circuit, prior to *Mackey,* determined the Section 522(b)(2)(A) exemption only extends to spe-

---

**1.** One wonders what the trustee will do with such a pension plan in light of their restrictions on alienation and the limited ability of a beneficiary under many plans to obtain any benefits prior to death, retirement or disability. *See, Williams v. Threet (In re Threet),* 118 B.R. 805 (Bankr.N.D.Okla.1990); *Redfield v. Peat, Marwick, Mitchell and Company (In re Robertson),*

115 B.R. 613 (Bankr.N.D.Ill.1990); Fischel, *ERISA's Fundamental Contradiction: The Exclusive Benefit Rule,* 55 U.Chi.L.Rev. 1105 (1988).

**2.** *Contra, In re Bryan,* 106 B.R. 749 (Bankr.S.D. Fla.1989) and *In re Martinez,* 107 B.R. 378 (Bankr.S.D.Fla.1989) where the Courts held ERISA does not preempt Fla.Stat. § 222.21.

cific federal statutes.[3] *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1491 (11th Cir.1985). The Court concluded since ERISA was not included in Congress' list of federal exemptions, it was not intended to be a federal exemption under Section 522(b)(2)(A).[4] Of course, any state law exemption envisioned for pension plans under Section 522(b)(2)(A) would fall to ERISA's preemption.

A similar result is where a debtor seeks protection under Fla.Stat. § 222.201. Florida, having opted out of the federal exemptions, passed this statute in 1987 to expand state exemptions by the Bankruptcy Code provisions under Section 522(d)(10). The statute not only runs afoul of *Mackey*, but is suspect in that it seeks to opt into the federal exemptions after Florida has opted out of the same exemptions.[5] On a pragmatic basis, there is no claim of exemption as to the payments from a pension plan by these debtors under Section 522(d)(10)(E) which is the sole province of that Section.

■ The last refuge, if not a separate and possibly an initial inquiry, is whether or not the pension plan is excluded from property of the estate under Section

---

**3.** The Eleventh Circuit cites to Congress' exemplary list of Federal exemptions which include: Foreign Service Retirement and Disability payments, 22 U.S.C. § 1104; Social Security payments, 42 U.S.C. § 407; Injury or death compensation payments from war risk hazards, 42 U.S.C. § 1717; Wages of fishermen, seamen, and apprentices, 46 U.S.C. § 601; Civil service retirement benefits, 5 U.S.C. §§ 729, 2265; Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. § 916; Railroad Retirement Act annuities and pensions, 45 U.S.C. § 228(*l*); Veterans benefits, 45 U.S.C. § 352(e); Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. § 3101; and Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. § 175. *See*, S.Rep. No. 989, 95th Cong., 2d Sess. 75, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5861; H.R.Rep. No. 595, 95th Cong., 2d Sess. 360, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6316.

**4.** The Publix Trustee argues the Congressional list of Federal exemptions, *supra*, n. 3, is illustrative, not exhaustive. He argues "[w]hen a meaning of a statute is clear on its face it is improper to resort to legislative history to interpret the statute. *Diamond v. Chakrabarty*, 447 U.S. 303, 315 [100 S.Ct. 2204, 2211, 65 L.Ed.2d 144] (1980). The plain meaning of the statute cannot be overcome by legislative history which 'through strained processes of deduction of events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.' *Ex parte Collett*, 337 U.S. 55, 61 [69 S.Ct. 944, 947, 93 L.Ed. 1207] (1949)." While the Publix Trustee's argument is most credible, this Court is bound by the Eleventh Circuit opinion, *Lichstrahl*.

In the case *In re Messing*, 114 B.R. 541 (Bankr.E.D.Tenn.1990), the Court refused to follow the reasoning of the Eleventh Circuit, as well as the Fifth, Eighth and Ninth Circuits. The Court, in holding ERISA establishes a "Federal Law" exemption under Section 522(b)(2)(A), reasoned [t]he common thread running through each [circuit] appears to be the reliance on legislative history as conclusive of a congressional intent that ERISA not be included as 'other Federal law' embodied within § 522(b)(2)(A). To this court the clear language of § 522(b)(2)(A) belies such an interpretation. Further, it appears that the Supreme Court in *Mackey* has expressly characterized ERISA § 206(d)(1) as a federal exemption.
*Id.*

**5.** In the case *In re Mata*, 115 B.R. 288 (Bankr. Colo.1990) the Colorado Legislature, after opting out of the federal exemptions, enacted a statute which created a special bankruptcy exemption for IRAs. The United States Bankruptcy Court for the District of Colorado held

The State of Colorado may freely adopt exemption statutes which serve to exempt a judgment debtor's assets from levy and execution by judgment creditors in this state. Those statutes will also allow debtors to exempt those same assets from the reach of the trustee in bankruptcy pursuant to 11 U.S.C. § 522(b)(2)(A). That is the scheme mandated and approved by Congress. *However, the State of Colorado cannot, under the guise of adopting an exemption statute, adopt a federal bankruptcy exemption for Colorado residents who file bankruptcy.* (Emphasis added). *Id.* Fla.Stat. § 222.201 applies to both bankruptcy and nonbankruptcy debtors and therefore avoids the Colorado Statute's problem. In addition, the Publix Trustee cites to authority stating "[t]he option permitted under 11 U.S.C. § 522(b)(1) and (2) for a state to restrict its citizens to exemptions under a state statutory scheme ['opting out'] is not inconsistent with incorporation of a federal exemption into the state exemption legislation." *In re Bryan*, 106 B.R. 749, 751 (Bankr.S.D.Fla.1989); *Cf. Eastern Air Lines, Inc. v. Department of Revenue*, 455 So.2d 311, 316 (Fla.1984), *appeal dismissed*, 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985) ("the legislature may adopt provisions of federal statutes and administrative rules made by a federal administrative body that are in existence and in effect at the time the legislature acts...").

541(c)(2) of the Bankruptcy Code. This issue was not considered by Judge Paskay in *Gardner, supra*. Section 541(c)(2) would exempt the ERISA plan if it was determined to be a spendthrift trust. Florida courts define a spendthrift trust as one "created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection." *See, Croom v. Ocala Plumbing & Electric Co.*, 62 Fla. 460, 57 So. 243 (1911); *Waterbury v. Munn*, 159 Fla. 754, 32 So.2d 603 (1947).

> There are no special requirements for the creation of a valid spendthrift trust beyond the normal requirements for any trust. For the spendthrift trust provision to be enforceable the settlor must clearly manifest his intention to restrain the trust beneficiary from alienating his interest in the trust. Such manifestation of intention must be found in the trust instrument itself and may not be inferred from surrounding circumstances. In creating the spendthrift trust the settlor need not state his motives or reasons for imposing the restriction.

D. Lowell, *Florida Law of Trusts*, § 15–5 (3rd ed.1984).

Unfortunately for debtors, the Eleventh Circuit in *Lichstrahl*, has limited the use of Section 541(c)(2). Acknowledging ERISA qualified plans containing anti-alienation provisions could be excluded under Section 541(c)(2) from property of the estate if *state law*[6] established them as a spendthrift trust, the Court went on to state particular plans would not qualify as spendthrift trusts if the beneficiary could exercise "absolute dominion" over the property of the trust. *Id.* at 1490.

The control factor or "absolute dominion" as announced in *Lichstrahl* suggests a plan whereby the debtor would only be entitled to the benefits under the plan upon debtor's retirement, disability or death. Any other ability to obtain benefits either by termination of employment, voluntary withdrawal or borrowing against the fund would disqualify the plan as spendthrift.[7] *Cf. In re Goshe*, 85 B.R. 157 (Bankr.M.D. Fla.1988) ("where the beneficiary has the right to require the trust administrator to convey trust property to him or her, the beneficiary has dominion and control over the trust res sufficient to defeat the validity of the spendthrift trust").

Therefore, if the debtors can prove their respective pension plans qualify under Florida law as a spendthrift trust whereby the debtor has no control over the plan, then the plan could be excluded from property of the estate. Thus, this method is the only protection for a debtor's pension plan in Florida under bankruptcy law at the present time.

---

**6.** The Publix Trustee correctly argues *Lichstrahl* involved a trust over which the settlor retained the power to amend the trust as opposed to a true spendthrift trust.

There is a dispute over the interpretation of the phrase "applicable nonbankruptcy law" in Section 541(c)(2). For instance, the *Lichstrahl* Court defines "applicable nonbankruptcy law" as "state law concerning spendthrift trusts." *Id.* at 1490. However, the Court in *Anderson v. Raine, (In re Moore)*, 907 F.2d 1476 (4th Cir. 1990) gives a broad interpretation to this phrase. In *Moore*, the Court noted

'Applicable nonbankruptcy law' means precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable. Nothing in the phrase 'applicable nonbankruptcy law' or in the remainder of § 541(c)(2) suggests that the phrase refers exclusively to state law, much less to state spendthrift trust law.

*Id.* The Court, after reviewing the language of the Code Section and the legislative history, determined ERISA contains an enforceable transfer restriction that would bring the statute within the meaning of the term "applicable nonbankruptcy law". Thus, there would be no need to rely on state law in that ERISA itself would preclude a pension plan from being property of the estate under Section 541(c)(2). Although this Court is bound by *Lichstrahl*, the Publix Trustee urges the Court to follow *Moore*, inasmuch as the facts in that case are more similar to the case at bar.

**7.** The Publix Trustee cites to cases which stand for the proposition that having a financial hardship withdrawal provision in a plan does not cause a participant to have absolute dominion and control over the retirement assets. The reasoning the Courts' use is the employer, not the debtor, has the sole discretion in granting the request for the hardship withdrawal. *See, In re Monahan*, 68 B.R. 997, 1000 (Bankr.S.D. Fla.1987); *Tyler v. Putman (In re Putman)*, 110 B.R. 783, 801 (Bankr.E.D.Va.1990).

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that by separate order, the Court will set a final evidentiary hearing for each Debtor to establish whether their respective plan qualifies as a spendthrift trust exception as stated in this order. The Publix Trustee will be allowed to present argument at the final evidentiary hearing, but will not be allowed to present evidence.

DONE AND ORDERED.