**In re Gerald A. ROSENQUIST, Debtor.**

**In re Kenneth J. HARTON et ux., Debtors.**

**Bankruptcy Nos. 89–02287–BKC–6C7, 89–02497–BKC–6C7.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Dec. 18, 1990.

Andrea A. Ruff, Andrea A. Ruff, P.A., Orlando, Fla., for the debtor, Rosenquist.

Frank M. Wolff, Wolff & Hill, Orlando, Fla., for Frank M. Wolff, Trustee.

Kenneth N. Jacoby, Kenneth N. Jacoby, P.A., Satellite Beach, Fla., for debtor, Hartons.

Michael G. Williamson, Maguire, Voorhis & Wells, P.A., Orlando, Fla., for Laurie K. Weatherford, Trustee for Hartons.

Andrew S. Hament, Harris Corp., Melbourne, Fla., and W. Russell Hamilton, III, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Miami, Fla., for Harris Corp.

## ORDER GRANTING TRUSTEES' MOTIONS FOR SUMMARY JUDGMENT

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

THESE Chapter 7 cases came on for hearing on June 25, 1990, of the motions for summary judgment filed by the trustees in the contested matters begun when the trustees objected to the debtors' claims of exemption.

Debtor Rosenquist and debtor Kenneth Harton are both eligible participants in the 1988 Harris Corporation Retirement Plan ("Harris Retirement Plan" or "Plan") sponsored by their employer, Harris Corporation. Debtor, Elaine Harton, as a spouse of a participant, also has certain rights under the Plan.

The debtors in both cases have claimed that their respective interests in the Harris Retirement Plan are either excluded from their bankruptcy estates under Section 541(c)(2) of the Bankruptcy Code or are exempt from administration of their estates under Section 522(b)(2)(A) of the Code. The trustees in both cases have objected to the claims of exemption.

Harris Corporation intervened in these contested matters contending that a victory by the trustees may cause the entire Harris Retirement Plan to loose its qualified status under the Internal Revenue Code. If the Plan is disqualified, Harris contends, over 18,000 Harris employees and former employees who are participants in the Harris Retirement Plan may suffer substantial adverse tax consequences. Harris contends that such a ruling might also cause the Plan to be in violation of provisions of applicable Federal pension law, thus creating the risk of civil liability and civil and criminal penalties against Harris as the sponsor of the Plan.

Because the same retirement plan is involved in both of these cases and because the issues presented in both cases are identical, the court consolidated the contested matters for trial and decision. The matters are now before the court on the trustees' motions for summary judgment. The undisputed material facts pertinent to a determination of these matters are:

## UNDISPUTED FACTS

### In general

1. The Harris Retirement Plan is an "employee pension benefit plan" as defined in Section 3(2)(A) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002(2)(A).[1] The Plan is an employee benefit plan described in Section 4(a) of ERISA, 29 U.S.C. § 1003(a). The Plan is not exempt under Section 4(b) of ERISA, 29 U.S.C. § 1003(b).

2. The various programs under the Harris Retirement Plan are qualified under Section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a).

3. The Harris Retirement Plan is governed pursuant to a plan of benefits (as from time to time amended). The plan contains the following pertinent provisions:

Article 5:6:1 *Benefits.* A terminated Participant shall be entitled to receive distribution of that portion of his Beneficial Interest hereunder which was vested at the date of his Termination of Employment. . . .

\*　　\*　　\*　　\*　　\*　　\*

1. ERISA is officially cited as the Employee Retirement Income Security Act of 1974, 88 Stat. 832 (codified as amended at 29 U.S.C. §§ 1001–1461) (1985 & Supp.1990).

Article 5:7:1 *In General.* If a Participant who is an Employee is in dire need of funds, because of his own sickness or accident disability, or because of the sickness or accident disability or death of a member of his family, or because of serious financial reverses or reduction in compensation, or because of any other similar emergency, and if there is no balance standing to the credit of a Savings Contribution Record maintained in his name ... the Corporation Committee, in its discretion, may, at the request of the Participant and pursuant to the recommendation by the appropriate Local Committee, elect to cause a distribution to be made to such Participant of any part or all of the then vested portion of that part of his Beneficial Interest in the Trust Estate represented by the balances in his Accounts other than his Supplemental Account....

\* \* \* \* \* \*

Article 5:10:1 *In General.* If a Member of the Deferred Income Program is in a position of immediate and heavy financial need on account of one of the following:

(a) Medical expenses ...;

(b) Purchase (excluding mortgage payments) of a principal residence for the Member;

(c) Payment of tuition for the next semester or quarter of post-secondary education for the Member, his Spouse, children, or dependents;

(d) The need to prevent the eviction of the Member from his principal residence or foreclosure on the mortgage of the Member's principal residence ...; or

(e) ....

... the Corporation Committee in its discretion, may, at the request of the Member and pursuant to a recommendation ..., elect to cause a distribution to be made to such Member....

\* \* \* \* \* \*

Article 5:12:2 *Terms and Conditions of Loans.* All loans hereunder shall comply with the following terms and conditions:

(a) The loan must be necessary (i) to alleviate financial need caused by death or serious illness ..., (ii) for education ..., (iii) for purchase of (or major repair or renovation to) the Member's primary place of residence, or (iv) for any purpose deemed by the Committee to enhance the retirement security of said Member.

### The Hartons

4. Kenneth J. Harton and Elaine V. Harton, his wife, filed their joint petition under Chapter 7 of the Bankruptcy Code on July 24, 1989.

5. The Hartons were domiciled in the State of Florida for more than 180 days immediately preceding the date of filing of the bankruptcy petition.

6. Kenneth J. Harton was employed by Harris on or about June 6, 1979, and continues to be employed by Harris.

7. On July 24, 1989, K. Harton was an eligible participant in the Harris Retirement Plan.

8. During 1989, but prior to July 24, 1989, K. Harton obtained a loan in the amount of $1,000 from the Harris Retirement Plan pursuant to the provisions of Article 5:12 of the Plan. As of July 24, 1989, the loan had not been fully repaid and continues to be partially unpaid.

9. As of July 31, 1989, K. Harton's interest in the Harris Retirement Plan totalled $10,130. This interest was composed of the following:

(a) A deferred income account totalling $2,960, representing employee contributions and accumulated investment gains;

(b) A deferred income program (DIP) vested matched account totalling $3,486, representing "matching contributions" made by Harris and accumulated investment gains; and

(c) A profit sharing account totalling $3,684, representing additional contributions made to the Harris Retirement Plan by Harris out of its profits, plus accumulated investment gains.

10. The employee contributions made by K. Harton into the Harris Retirement Plan through July 31, 1989, totalled $1,018.

11. On July 24, 1986, K. Harton was fully vested in all of his Harris Retirement Plan account balances and continues to be fully vested.

12. K. Harton's interests in the Harris Retirement Plan as of July 31, 1989, as reflected in paragraph 9 above, do not include any amounts remaining due on the loan described in paragraph 8 above.

13. Elaine Harton, as the spouse of K. Harton, is a beneficiary under the Plan.

### Rosenquist

14. Gerald Rosenquist filed his petition under Chapter 7 of the Bankruptcy Code on July 5, 1989.

15. Rosenquist was domiciled in the State of Florida for more than 180 days immediately preceding the date of filing of the bankruptcy petition.

16. Rosenquist was employed by Harris on or about June 18, 1984, and continues to be employed by Harris.

17. On July 5, 1989, Rosenquist was an eligible participant in the Harris Retirement Plan.

18. In August, 1987, Rosenquist obtained a loan in the amount of $2,000 from the Harris Retirement Plan under the provisions of Article 5:12 of the Plan. On July 5, 1989, the amount of the loan had not been fully repaid and continues to be partially unpaid.

19. As of July 31, 1989, Rosenquist's interest in the Harris Retirement Plan totalled $10,868. This interest was composed of the following:

(a) A deferred income account totalling $5,418, representing employee contributions and accumulated investment gains;

(b) A deferred income program (DIP) vested matched account totalling $4,261, representing "matching contributions" made by Harris and accumulated investment gains; and

(c) A profit sharing account totalling $1,189, representing additional contributions made to the Harris Retirement Plan by Harris out of its profits, plus accumulated investment gains.

20. The amounts of Rosenquist's interest in the deferred income program (DIP) vested matched account and the profit sharing account, as described in subparagraphs 19(b) and (c) above, represent his 60 percent vested interest in those accounts.

21. The employee contributions made by Rosenquist into the Harris Retirement Plan through July 31, 1989, totalled $4,270.28.

22. On July 5, 1989, Rosenquist was fully vested in the deferred income account and was 60 percent vested in the deferred income program (DIP) vested matched account and the profit sharing account.

23. Rosenquist's interest in the Harris Retirement Plan at July 31, 1989, as reflected in paragraph 19 above, does not include any amounts remaining due on the loan described in paragraph 18 above.

### CONCLUSIONS OF LAW

This court has jurisdiction over the parties and the subject matter of these contested matters pursuant to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference entered by the district court. These are core proceedings within the meaning of 28 U.S.C. § 157(b).

There are two general issues presented by the trustees' objections to the debtors' claims of exemption. First, are the Harris Retirement Plan interests property of the debtors' bankruptcy estates under Section 541 of the Bankruptcy Code? Second, if the Plan interests are property of the estate, can the interests be claimed exempt from administration of their estates under Section 522(b)(2)(A) of the Bankruptcy Code? As to these, there are no genuine issues of any material fact, and resolution of the issues is solely a matter of law.

### I

The threshold question is whether the debtors' Harris Plan interests are property of their bankruptcy estates pursuant to Section 541 of the Bankruptcy Code. Under Section 541, all property in which a debtor has a legal or equitable interest at

the time of filing bankruptcy becomes part of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Section 541(c)(2), however, grants an exception to this general rule. It provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable *non-bankruptcy law* is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (emphasis added). This subsection therefore preserves restrictions on transfers of a debtor's beneficial interests in a trust when those restrictions are enforceable under applicable non-bankruptcy law and prevents such an interest from being included in the bankruptcy estate. *In re Lichstrahl,* 750 F.2d 1488, 1489 (11th Cir. 1985).

In construing Section 541(c)(2), the court of appeals in *Lichstrahl* held that "applicable non-bankruptcy law" refers *only* to state spendthrift trust law. Consequently, the debtors' Plan interests here are excluded from their estates only if the anti-alienation provisions contained in the Plan are enforceable under state law as a spendthrift trust. *Id.* at 1490. See also, *John Hancock Mutual Life Insurance Co. v. Watson (In re Kincaid),* 917 F.2d 1162, 1167 (9th Cir.1990); *In re Goff,* 706 F.2d 574, 582 (5th Cir.1983); *Putney v. May (In re May),* 83 B.R. 812 (Bankr.M.D.Fla.1988); *In re Goshe,* 85 B.R. 157 (Bankr.M.D.Fla. 1988). *Contra, In re Moore,* 907 F.2d 1476 (4th Cir.1990).

The Eleventh Circuit's decision in *Lichstrahl* is plainly binding on this court and conclusively disposes of the contention of the debtors and Harris that "applicable non-bankruptcy law," as used in Section 541(c)(2), includes the anti-alienation provisions contained in ERISA, 29 U.S.C. § 1056(d)(1), that might be construed to provide a separate, and perhaps broader, ground for exclusion than state spendthrift trust law.

■ Having concluded that ERISA itself does not provide an additional ground for exclusion, the court must next examine the Plan provisions in light of Florida spendthrift law.[2] Florida common law recognizes as valid and enforces spendthrift trusts, those trusts:

> that are created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self protection. The provisions against alienation of the trust fund by the voluntary act of beneficiary, or by invitum by his creditors, are usual incidences of a trust.

*Croom v. Ocala Plumbing & Electric Co.,* 62 Fla. 460, 465, 57 So. 243, 244 (1911); *Waterbury v. Munn,* 159 Fla. 754, 32 So.2d 603 (1947).

■ Because the purpose of a spendthrift trust is to protect the beneficiary from himself and his creditors, it is clear that, under Florida law, such a trust will fail where the beneficiary exercises absolute dominion over the trust res. *Lichstrahl, supra* at 1490 (trust failed because beneficiary, as sole officer and director of his professional association, had absolute discretion to amend or terminate plan). Further, when the beneficiary has the right to require the trust administrator to convey trust property to him or her, the beneficiary has sufficient dominion over the trust res to defeat the validity of the spendthrift trust. *In re Martin,* —— Bankr. ——, ——, 4 F.L.W.Fed. B300, B301 (Bankr.M.D.Fla. Oct. 12, 1990) (ability to borrow or make hardship withdrawals from ERISA plan is inconsistent with spendthrift trust). See also *In re Brooks,* 844 F.2d 258 (5th Cir.1988) (part ownership in 32–member association, together with ability to borrow to buy a house, to educate children, or to meet a hardship, and the right to distribution upon termination, were sufficient to invalidate spendthrift trust); *Goff, supra* at 587 (self-settled Keogh plan not exempt under spendthrift trust provision); *Goshe, supra* at 159 (spendthrift trust invalid where debtor, upon written demand without further written approval of admin-

---

**2.** All parties to these contested matters have argued Florida spendthrift trust law to the court. The court is not required, therefore, to determine whether the law of another state may apply or, if so, whether that state's law is different from Florida's on the relevant points.

istrator, had right to early distribution and accelerated payment); *May, supra* at 814 (spendthrift trust invalid to extent of debtor's right to demand $8,000 annual payment from trust); *In re Nichols*, 42 B.R. 772 (Bankr.M.D.Fla.1984) (spendthrift provision invalid based on ability to terminate and compel distribution and to borrow); *In re Watson*, 13 B.R. 391 (Bankr.M.D.Fla. 1981) (spendthrift clause in trust created by settler for his own benefit is void).

As counsel for Harris conceded at the hearing, the Harris Plan contains the *minimum* anti-alienation provisions *required* by ERISA and gives Plan participants the *maximum* control over their accounts *permitted* by the Internal Revenue Service for the retention of the Plan's tax qualified status. Thus, Harris has plainly set up the Plan to give its employees the maximum control over their accounts that they can have if the Plan is to retain its favorable tax treatment. The excerpts of the Plan set forth in paragraph 3 of the Undisputed Facts above, while remaining within the parameters of the regulations, provide for the distribution of all vested portions on termination of employment. They also permit distributions to the extent of an employee's vested interest in the event of dire need caused by, among other things, serious financial reverses. In addition, the Plan permits employees to borrow from the fund for specified purposes.

The debtors here therefore have substantial dominion and control over their accounts. They can choose to draw from their accounts, and they can orchestrate events so as to permit distribution. Indeed, the debtors in both cases have in fact exercised their powers and have taken funds from their accounts as loans. As a matter of Florida spendthrift trust law, the degree of discretion held by the debtors under the Plan destroys the spendthrift protection that would exist but for the debtors' powers. The court therefore concludes that the debtors accounts under the Plan are not spendthrift trusts under Florida law, and the accounts are therefore property of the respective bankruptcy estates.

## II

Having concluded that the debtors' vested Plan interests are property of the estates, the court must next determine whether the debtors' interests in the Harris Plan may be claimed as exempt. Section 222.20, Florida Statutes 1989, provides that Florida residents are not entitled to the federal exemptions provided in Section 522(d) of the Bankruptcy Code. Instead, Florida residents may exempt only that property described in Section 522(b)(2) of the Bankruptcy Code. That subsection, of course, establishes as exempt "any property that is exempt under *Federal law, other than subsection (d) of this section*, or State or local law that is applicable...." (Emphasis supplied.)

### A

The debtors and Harris contend that the anti-alienation provisions contained in ERISA, in particular 29 U.S.C. § 1056(d)(1), provide an exemption under non-Section 522(d) federal law within the meaning of Section 522(b)(2)(A). The court of appeals, however, addressed this issue in the *Lichstrahl* case. Based on its analysis of congressional intent, the court of appeals held that Congress did not intend to exempt ERISA-qualified pension plans under this subsection. *Lichstrahl, supra* at 1491.

Harris and the debtors ask this court to ignore this Eleventh Circuit precedent because of the recent decision of the Supreme Court in *Guidry v. Sheet Metal Workers National Pension Fund*, — U.S. —, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). They point out that in *Lichstrahl* the court relied heavily upon the Fifth Circuit's analysis in *In re Goff, supra*. *Goff*, of course, stands for the proposition that the anti-alienation provision of 29 U.S.C. § 1056(d) is merely a requirement to qualify as an ERISA plan and does not in itself restrict alienation or assignment of a plan account. *Guidry*, however, has now established that the anti-alienation provision of 29 U.S.C. § 1056(d) does indeed constitute a bar to alienation or assignment. *Guidry*,

*supra,* 110 S.Ct. at 685. In light of the Supreme Court's decision in *Guidry,* at least one court has recently rejected the *Goff* analysis and held that the ERISA anti-alienation provision provides an exemption under federal law within the meaning of Section 522(b)(2)(A). *In re Starkey,* 116 B.R. 259, 263, 20 Bankr.Ct.Dec. 1178, 1180 (Bankr.D.Colo.1990). See also *In re Burns,* 108 B.R. 308, 313–16 (Bankr.W.D. Okla.1989); *In re Komet,* 104 B.R. 799, 805 (Bankr.W.D.Tex.1989); *In re Hinshaw,* 23 B.R. 233, 235 (Bankr.D.Kan.1982).

While the foundation for the decision in *Lichstrahl* may have been weakened by the subsequent Supreme Court decision, *Lichstrahl* has not been overruled and remains the controlling precedent of this circuit. This court is bound to conclude, therefore, that ERISA does not itself provide a federal law exemption for the debtors' accounts.

### B

■ Turning then to exemptions provided by state law, the Harris Plan plainly falls within the scope of Section 222.-21(2)(a), Florida Statutes 1989. The question presented here, therefore, is whether that state statute has been preempted by 29 U.S.C. § 1144(a). If it has been preempted, it cannot be used by the debtors to exempt their accounts.

Section 1144(a) of Title 29, United States Code, provides that, with certain exceptions not relevant here, "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." (Emphasis added).

■ The Supreme Court has held that a law "relates to" an employee benefit plan if it has a connection with or reference to such a plan. *FMC Corporation v. Holliday,* 498 U.S. ——, ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). State laws that are "specifically designed to affect employee benefit plans" are thus preempted under 29 U.S.C. § 1144(a). *Mackey, supra,* 486 U.S. at 829, 108 S.Ct. at 2185. The possibility that a statute was enacted to help effectuate, rather than frustrate, ERISA's underlying purposes is not enough to save a state law from preemption. The preemption provision of Section 1144(a) displaces all state laws that fall within its sphere, including state laws that are consistent with ERISA's substantive requirements. *Id.; Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

Using these principles, it is plain that 29 U.S.C. § 1144(a) preempts Section 222.-21(2)(a), Florida Statutes 1989; the provisions of this Florida exemption are therefore not available to the debtors here to protect their Plan accounts. This conclusion is consistent with the well-reasoned decisions of all of the other judges of this court, *In re Schlein,* 114 B.R. 780 (Bankr. M.D.Fla.1990) (Proctor, J.); *In re Sheppard,* 106 B.R. 724 (Bankr.M.D.Fla.1989) (Paskay, J.); *In re Bryant,* 106 B.R. 727 (Bankr.M.D.Fla.1989) (Paskay, J.); *In re Lee,* 119 B.R. 833 (Bankr.M.D.Fla.1990) (Baynes, J.); although the court recognizes that at least two judges in the Southern District of Florida have reached contrary conclusions, *In re Martinez,* 107 B.R. 378 (Bankr.S.D.Fla.1989) (Weaver, J.); *In re Seilkop,* 107 B.R. 776 (Bankr.S.D.Fla.1989) (Weaver, J.); *In re Bryan,* 106 B.R. 749 (Bankr.S.D.Fla.1989) (Britton, J.).

The controlling case law compels the result stated here, despite the fact that it is a result that the Florida Legislature surely did not intend and may even be a result the Congress may not have intended. The point is simply that it is the result that reason requires; the Congress can easily amend ERISA or the Bankruptcy Code, or both, if its desires to exempt the retirement accounts of Chapter 7 debtors. The parade of horribles recited by Harris as flowing from this result therefore do not dissuade

the court from reaching the result that the law and reason require.

## C

Rosenquist contends that there are three other grounds upon which he may rely in exempting his interest in the Harris Plan. The first is that Section 522(d)(10)(E) of the Bankruptcy Code, made applicable by Section 222.201, Florida Statutes 1989, permits the exemption of the Harris Plan to the extent reasonably necessary for the support of the debtor and his dependents.

Section 522(b) of the Bankruptcy Code permits a debtor to elect the list of exemptions specified in Section 522(d), the federal exemptions, unless the applicable state law does not authorize that selection. In the alternative, the debtor is permitted to exempt property that is exempt under state law or non-Section 522(d) federal law.

In 1979, pursuant to the provisions of Section 522(b) of the Bankruptcy Code, the Florida Legislature enacted what is now Section 222.20, Florida Statutes 1989, which provides that "residents of this state shall not be entitled to the federal exemptions of s. 522(d) of the Bankruptcy Code...." Thus, Florida opted out of the exemptions provided by Section 522(d) of the Bankruptcy Code, and Florida resident debtors are limited to the exemptions provided by state law and federal law other than in subsection (d). 11 U.S.C. § 522(b)(1) and (2).

In 1987, the Florida Legislature enacted what is now Section 222.201, Florida Statutes 1989, which provides that:

> (1) Notwithstanding s. 222.20, an individual debtor under the federal Bankruptcy Reform Act of 1978 may exempt, in addition to any other exemptions allowed under state law, any property listed in subsection (d)(10) of s. 522 of that act.

Section 522(d)(10)(E) of the Bankruptcy Code, of course, permits the exemption of a payment under a pension and profit sharing plan to the extent reasonably necessary for the support of the debtor and any dependent of the debtor if the plan qualifies under Section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a).

Clearly, if Section 222.201 is determined to be a state law that permits Florida residents to exempt their ERISA plans, that statute is preempted by ERISA just as Section 222.21 is preempted as discussed above. Rosenquist argues, however, that instead of providing another state exemption, Section 222.201 amends or supersedes in part Section 222.20 to permit Florida residents to avail themselves of the federal exemptions provided by Section 522(d)(10). While the debtor does not articulate his theory, he appears to urge the view that, although Florida initially opted out of the federal bankruptcy exemption scheme set forth in Section 522(d) of the Bankruptcy Code by virtue of Section 222.20, the Legislature later decided by enacting Section 222.201 to opt back in to the federal exemption scheme on a partial basis.

Assuming that the legislative intent was to opt back in partially as the debtor suggests, the result would be that a Florida debtor could elect either the state and non-Section 522(d) federal exemptions as authorized by subparagraph (2) of Section 522(b) or only the few federal exemptions described in Section 522(d)(10) as authorized by subparagraph (1) of Section 522(b) and Section 222.201 but not the other federal exemptions provided in the other subparagraphs of Section 522(d). This result follows, of course, because Section 222.201 refers only to subparagraph 10 of Section 522(d) and not to the section generally or to its ten other subsections, each of which contains other federal exemptions.

Although the debtor's reading of the statute would thus permit the debtor to exempt the Harris Plan interests under Section 522(d)(10)(E), it would not permit the exercise of any other exemptions provided in the other subsections of Section 522(d) and it would not permit the use of any state exemptions that are available only pursuant to Section 522(b)(2). This is clearly not the result intended by the debtor because he has in fact claimed the Florida homestead exemption and other exemptions provided by Florida law.

In any event, the debtor's interpretation must be rejected as contrary to the clear language of Section 222.201. The legislative intent was plainly not to provide Florida residents the option of electing either subparagraph (b)(1), albeit to a limited extent, or subparagraph (b)(2) of Section 522. Section 222.201 provides that a debtor may exempt, *"in addition* to any other exemptions allowed under state law, any property listed in subsection (d)(10) of s. 522 of that act." (Emphasis supplied.)

■ The debtor also appears to suggest that the Florida statute be construed to permit a debtor to stack the exemptions available under subparagraph (b)(1) on top of the exemptions available under subparagraph (b)(2). That construction must also be rejected. The first sentence of Section 522(b) clearly requires a debtor to choose between subparagraphs (b)(1) and (b)(2) of Section 522, not to choose both or some of both. A state statute that purports to permit a debtor to choose a combination of the two would be in direct contravention of the Bankruptcy Code and therefore ineffective. *See In re Gardner,* —— Bankr. ——, ——, 4 F.L.W.Fed. B283, B285 (Bankr.M.D.Fla. Oct. 5, 1990).

The only construction that would give effect to Section 222.201 is that it is a state statute providing certain *state* law exemptions to debtors who are Florida residents. Rather than stating the categories of property to be included, the statute simply refers to, and incorporates by reference, a list of property that is set forth at length in Section 522(d)(10) of the Bankruptcy Code, only one of which involves ERISA plans. As previously noted, however, as a state statute providing a state law exemption, Section 222.201 relates to ERISA employee benefit plans and is therefore preempted by 29 U.S.C. § 1144(a). *Lee, supra* at 834–835. *Contrna Bryan, supra* at 751; *In re Vickers,* 116 B.R. 149 (Bankr.W.D.Mo. 1990).

Rosenquist next asserts that Section 525 of the Bankruptcy Code forbids a decision by this court that finds that the Harris Plan is non-exempt property because it might later be used to compel Harris to turn over the account funds. Such a result, Rosenquist contends, would occur solely in the bankruptcy context and would not occur in any other context. For example, Section 222.21 would immunize these assets from levy or execution under Florida law. Thus, Rosenquist contends, he would receive discriminatory treatment at the hands of this court solely because he is a debtor under the Bankruptcy Code.

■ Stating the argument reveals its absurdity. There is absolutely no authority for the proposition that the anti-discrimination provisions of Section 525 supersede Section 522(b) of the Bankruptcy Code. Clearly, the Code provides protection to debtors and, in return, imposes numerous requirements on them that do not exist in non-bankruptcy settings. Debtors are not a suspect class accorded protection from discrimination under the Constitution of the United States. In addition, the same preemption analysis would apply to Section 222.21 whether or not the protection was sought in bankruptcy court or in state court. *See Mackey, supra,* 486 U.S. at 835, 108 S.Ct. at 2188.

■ Finally, Rosenquist also argues that his interest in the Harris Plan is exempt as wages pursuant to Section 222.11, Florida Statutes 1989, despite the fact that Sections 222.21 and 222.201 have been preempted by ERISA, as the court has now held. Although Section 222.11 permits the head of a family to exempt his wages, the final sentence of that section provides that "[t]his exemption shall apply to any wages deposited in any bank account maintained by the debtor when said funds can be traced and properly identified as wages." The debtor's interest in the Harris Plan is not a bank account within the meaning of the statute, nor is it maintained by the debtor. By the debtor's own admission, the plan is maintained and administered by Harris.

## CONCLUSION

For these reasons, the debtors' interests in the Harris Plan are property of their bankruptcy estates. The interests are not

exempt under non-Section 522(d) federal or Florida law. The trustees' motions for summary judgment are granted, and the trustees' objections to the debtors' claims of exemption are sustained.

Pursuant to Bankruptcy Rule 9021 and F.R.Civ.P. 58, the court will enter a separate judgment in each case consistent with this decision.

DONE and ORDERED.